IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-405 |
| | § | C.A. No. C-05-511 |
| ROSALBA VILLEGAS, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DISMISSING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE, AND
DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Rosalba Villegas' ("Villegas") motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 (D.E. 15),[1] which was received by the Clerk on September 29, 2005. The Court concludes that it is not necessary to order a government response because "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b) of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS. Villegas' motion is subject to dismissal because she waived her right to file the sole claim she raises therein, a claim based on United States v. Booker, 125 S. Ct. 738 (2005). The motion is also subject to dismissal because Booker is not retroactively applicable on collateral review. Accordingly, a defendant like Villegas, whose conviction became final before Booker was issued, is not entitled to relief under that case.

For these reasons, discussed in more detail below, the Court DISMISSES the motion. Additionally, the Court DENIES Villegas a Certificate of Appealability.

---

[1] Dockets entries refer to the criminal case, C-04-cr-405.

1

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II.  FACTS AND PROCEEDINGS

On July 28, 2004, Villegas was charged in a single-count indictment with: (1) possession with intent to distribute approximately 11.9 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (D.E. 1).  On August 27, 2004, Villegas pleaded guilty to the indictment pursuant to a written plea agreement.  (D.E. 7, 8).  In exchange for her guilty plea and her  waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that she receive a three-level credit for acceptance of responsibility and to recommend a sentence at the low end of the applicable guideline range. (D.E. 8 at ¶¶ 1-2).

The plea agreement contained a voluntary waiver of Villegas' right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  The defendant waives the right to appeal the sentence imposed or the manner in which it was determined.  The defendant may appeal only (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States.  Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 8 at ¶ 8) (emphasis in original).

At Villegas' rearraignment, the prosecutor summarized the identical plea agreements of the defendants being rearraigned at that time.  He specifically stated that "Each agreement calls for each defendant to give up their appellate rights, except in two instances. [Omitted discussion of those two

2

exceptions].  Each agreement also explains to the defendant that he is giving up his right or her right to collaterally attack the conviction or sentence pursuant to Title 28 United States Code 2255." (Digital Recording of August 27, 2004 Rearraignment ("R. Rec.") at 3:38-3:41).

Villegas testified that the summarized agreement was hers, that it was the entire agreement and that she understood it.  (R. Rec. at 3:41-3:42).  She further testified that no one had made any promises to her that were not in the agreement.   Villegas also reviewed the written agreement.  She testified that it was her agreement, that her signature was on last page, and that she had read it and discussed it completely with her attorney before she signed it.  (R. Rec. at 3:41-3:42).

The Court questioned Villegas under oath at the rearraignment to ensure that her plea was voluntary and knowing and to ensure that she understood and was voluntarily relinquishing her appeal rights and right to file a § 2255 motion.  In ensuring that her waiver of § 2255 rights was voluntary, the Court explained to Villegas that she was giving up her right to a post-conviction remedy, and that, by her plea, she would be giving up the right to file a motion trying to set aside her conviction and/or her sentence by attacking its constitutionality, the jurisdiction of the Court, or such matters as ineffective assistance of counsel.  Villegas testified that she understood and that she was ready to forward and give up those rights. (R. Rec. at 3:32-3:36).  It is clear from the foregoing that Villegas' waiver was knowing and voluntary.  See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting a plea).

The Court sentenced Villegas on October 8, 2004, to 46 months in the custody of the Bureau of Prisons, to be followed by a five-year term of supervised release, and imposed a $50 fine and a $100 special assessment.  (D.E. 13, 14).  Judgment of conviction and sentence was entered October 24, 2004. (D.E. 14).  Consistent with her waiver of appellate rights, Villegas did not appeal.  Her § 2255 motion was received by the Clerk on September 29, 2005. (D.E. 15).  It is timely.

3

### III.  MOVANT'S ALLEGATIONS

Villegas asserts only a single claim for relief.  Specifically, she asserts a claim pursuant to United States v. Booker, 125 S. Ct. 738 (2005) and asks that she be resentenced under the post-Booker advisory sentencing guideline system, instead of the mandatory system pursuant to which she was sentenced.  (D.E. 15 at 5).   She does not offer any additional detail in support of her claim.

### IV.  DISCUSSION

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Villegas has procedurally defaulted her claim by failing to appeal.  Rather, the Court concludes that she waived the sole claim she raises in her § 2255 motion. United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights); United States v. McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing, post-Booker, a waiver of appeal rights that was signed prior to the issuance of Booker).

4

**B.      Waiver of § 2255 Rights**

It is clear from the rearrangement recording that Villegas understood that she was waiving her right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for a knowing waiver.  See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up).  Villegas' sworn statements in open court are entitled to a strong presumption of truthfulness.  United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); Wilkes, 20 F.3d at 653 (citing Blackledge for same proposition).  Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).  Those statements here clearly support a finding that Villegas' wavier was knowing and voluntary.  Her claim falls within the scope of that waiver.  Thus, it is not properly before the Court. See generally Wilkes, supra; White, supra.

Moreover, the fact that Booker was not decided until after Villegas signed her waiver does not place her claim outside the scope of the waiver.  The Fifth Circuit has clearly held that "Blakely[2] and Booker do not alter the plain meaning of appeal-waiver provisions in valid plea agreements." McKinney, 406 F.3d at 746-47 & n.5; see also, e.g., United States v. Killgo, 397 F.3d 628, n.2 (8th Cir. 2005) (enforcing waiver of appeal rights as to Sixth Amendment claim, noting that "[t]he fact that [defendant] did not anticipate the Blakely or Booker rulings does not place the issue outside the scope of his waiver"); United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005) (upholding waiver of appeal rights signed prior to Blakely in case raising Booker claim); United States v. Bradley, 400 F.3d 459, 465-66 (6th Cir. 2005) (enforcing defendant's waiver of appeal signed prior to Booker as

---

[2]  Blakely v. Washington, 124 S. Ct. 2531 (2004), Booker's predecessor, dealt with a state's sentencing guidelines.  The Booker court extended the reasoning of Blakely to the federal guidelines.

barring his <u>Booker</u> claim and collecting federal circuit court authority in agreement).

For all of the foregoing reasons, Villegas' motion is barred by her waiver and is therefore DISMISSED WITH PREJUDICE.

**C.     Availability of Relief Under <u>Booker</u>**

Even if Villegas had not waived her right to file the claim raised in her § 2255 motion, that claim relies entirely on <u>Booker</u>.  Villegas' conviction became final, however, prior to the issuance of the <u>Booker</u> decision on January 12, 2005.  Thus, she would be entitled to relief under <u>Booker</u> only if the case applied retroactively.  The Court concludes herein that <u>Booker</u> is not retroactive, and thus Villegas is not entitled to relief under <u>Booker</u>.  Accordingly, her motion is subject to dismissal for this additional reason, as well.

**1.      <u>Booker</u> Background**

To explain the Court's conclusions regarding the retroactivity of <u>Booker</u>, some background regarding both it <u>Blakely</u> is warranted.  In <u>Blakely</u>, the Supreme Court held that the trial court's sentencing of the state defendant violated his Sixth Amendment right to a jury trial.  Specifically, the court held that <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and other precedents preclude a judge from utilizing a fact found by him using a preponderance of the evidence standard, in order to impose more than the maximum sentence that could be imposed based solely on the facts reflected in the jury verdict or admitted by the defendant.  <u>Blakely</u>, 124 S. Ct. at 2537-38.  <u>Blakely</u> involved a defendant sentenced in a Washington state court pursuant to Washington's determinate sentencing scheme. <u>See generally</u> <u>id.</u>

<u>Booker</u> addressed <u>Blakely</u>'s impact on the federal sentencing guidelines, which are applied in federal criminal cases.  <u>Booker</u> consists of two majority decisions.  In the first majority opinion,

authored by Justice Stevens, the Court held that Blakely applied to the federal guidelines. As with the sentencing scheme at issue in Blakely, the mandatory nature of the federal sentencing guidelines implicated defendants' Sixth Amendment rights, because the guidelines can require judges to find facts and sentence defendants to more severe sentences than could be imposed based solely on facts found by the jury or admitted in the plea colloquy. Booker, 125 S. Ct. at 750-51, 756.

In the second majority opinion, authored by Justice Breyer, the Supreme Court discussed the remedy to be applied in light of its first holding. The remedy selected by the majority of the justices was to excise certain portions of the guidelines (most notably the provision making them mandatory, 18 U.S.C. § 3553(b)(1), and a provision dealing with appeals from sentencing decisions, 18 U.S.C. § 3742(e)), but to preserve the scheme as a whole. Booker, 125 S. Ct. at 756-57. As a result, the Court's decision rendered the guidelines "effectively advisory." Id. at 757. The court held, however, that district courts are required to consider the advisory guideline sentence when sentencing within the statutory ranges set by Congress. Id.

## 2.    Retroactivity Analysis

Neither of the majority opinions states that Booker should be applied retroactively to convictions and sentences that are already final. Instead, Justice Breyer's decision concerning the proper remedy simply indicates that Booker's holdings should be applied "to all cases on direct review." Booker, 125 S. Ct. at 769 (emphasis added).[3]

The Fifth Circuit has held that the Supreme Court has not made Booker retroactive, for purposes of allowing second or successive petitions under 28 U.S.C. § 2255. In re Elwood, 408 F.3d

---

[3] The Court recognizes, of course, that retroactivity was not an issue in Booker or its companion case, Fanfan, both of which came to the Supreme Court as direct criminal appeals. Thus, the quoted language arguably has no meaning as to Booker's retroactivity in collateral proceedings.

211 (5th Cir. 2005).  Additionally, in the context of discussing whether a claim fell within the savings clause of § 2255, a panel of the Fifth Circuit has recently stated:  "Like Apprendi, Booker's holding is not retroactively applicable to cases on collateral review."  Padilla v. United States, 416 F.3d 424, 427 (5th Cir. 2005).  The Padilla decision does not contain any analysis or discussion as to how the court reached this conclusion.  Rather, the decision simply cites to the first page of the Booker decision for authority, as well as to a case decided prior to Booker, Wesson v. U.S. Penitentiary Beaumont, TX, 305 F.3d 343, 347 (5th Cir. 2002), neither of which states that Booker does not apply retroactively.  Nonetheless, to the extent the opinion was intended to address the precise issue before the Court here,[4] it directs that Booker is not retroactively applicable.

Notably, the Padilla court's conclusion is consistent with every other federal court of appeals to have addressed the issue directly.  Specifically, the Second, Third, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have all addressed the retroactivity of Booker on initial collateral review and have concluded that Booker does not apply retroactively.  See McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005) (concluding that Booker states a new non-watershed procedural rule and does not apply retroactively to criminal cases final before its release); United States v. Humphress, 398 F.3d 855 (6th Cir. 2005) (same); Varela v. United States, 400 F. 3d. 864 (11th Cir. 2005) (same); Guzman v. United States, 404 F.3d 139 (2d Cir. 2005) (same); Lloyd v. United States, 407 F.3d 608 (3d Cir. May 17, 2005) (same); United States v. Bellamy, 411 F.3d 1182 (10th Cir. 2005) (same);

---

[4] As noted, the Padilla court's statement was made in the context of discussing whether a defendant's claims fell within the scope of the savings clause of § 2255.  In order to show that his claims fell within the savings clause, the movant had to show that he was asserting a claim of actual innocence "(1) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal or first § 2255 motion."  Padilla, 416 F.3d at 426 (quoting Reyes-Requena v. United States, 243 F.3d 893 (5th Cir. 2001)).  Despite its broad language, the lack of any analysis suggests that it may not have been intended to directly address the more complicated issue of whether Booker is retroactive on initial collateral review outside the context of § 2255's savings clause.

<u>Never Misses a Shot v. United States</u>, 413 F.3d 781 (8th Cir. 2005) (same); <u>United States v. Cruz</u>, 423 F.3d 1119 (9th Cir. 2005) (*per curiam*) (same).[5]

The Court agrees with the reasoning set forth in the foregoing cases.  In particular, the Court concludes that the Supreme Court's decision in <u>Schriro v. Summerlin</u>, 124 S. Ct. 2519 (2004), handed down the same day as <u>Blakely</u>, is highly pertinent to the issue of <u>Booker</u> and <u>Blakely</u> retroactivity.  In <u>Schriro</u>, the Supreme Court was faced with determining whether its decision in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), could be applied retroactively on collateral review.  <u>Ring</u>, like <u>Blakely</u>, applied the principles of <u>Apprendi</u>.  In <u>Ring</u>, the Court held that a jury must find the aggravating facts statutorily required to impose the death penalty.   In <u>Schriro</u>, the Court first concluded that <u>Ring</u> was a new rule of procedure (as opposed to a substantive rule), and noted the general principle that new rules of procedure do not apply retroactively.  124 S. Ct. at 2522-23.  It then determined that the rule in <u>Ring</u> did not fall within any of the narrow exceptions to the general principle, as set forth in <u>Teague v. Lane</u>, 489 U.S. 288 (1989), including the exception for "watershed rules of criminal procedure" essential to the fairness of the proceedings.  <u>Schriro</u>, 124 S. Ct. at 2524-25.  It concluded, therefore, that "<u>Ring</u> announced a new procedural rule that does not apply retroactively to cases already final on direct review." <u>Schriro</u>, 124 S. Ct. 2526.

This Court finds the reasoning in <u>Schriro</u> to be persuasive and pertinent here.  Like the rule in <u>Ring</u>, the rule announced in <u>Blakely</u> (and extended to the federal guidelines in <u>Booker</u>) is a new rule of procedure, but does not fall within any of the <u>Teague</u> exceptions.

The Court recognizes, however, that <u>Schriro</u> did not address the evidentiary standard issue in

---

[5] The First Circuit has taken a slightly different approach.  <u>See</u> <u>Cirilo-Munoz v. United States</u>, 404 F.3d 527 (1st Cir. 2005) (holding that <u>Booker</u> claims cannot be advanced under § 2255 in the absence of a Supreme Court decision rendering <u>Booker</u> retroactive).

Blakely, i.e., the portion of the holding that requires facts increasing a sentence to be found beyond a reasonable doubt, rather than by a simple preponderance standard.  Rather, the Schriro court determined the retroactivity of a rule delineating who the factfinder should be (i.e., judge versus jury).

As the Seventh and Third Circuits noted in addressing Booker's retroactivity, however, the determination of whether or not the evidentiary standard is a "watershed" rule of procedure that should be applied retroactively would be a more difficult one if only the first majority opinion existed in Booker.  See McReynolds v. United States, 397 F.3d 479 (7th Cir. 2005); Lloyd v. United States, 407 F.3d 608 (3d Cir. 2005).  But the remedy selected by the second Booker majority "held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence."  McReynolds v. United States, 397 F.3d at 481; see also Lloyd, 407 F.3d at 615 ("It would be one thing if we were only dealing with Justice Stevens's opinion in Booker," but "[b]y creating an advisory federal sentencing regime, the Booker Court did not announce a new rule of criminal procedure that significantly increases the 'certitude' or 'accuracy' of the sentencing process.").

The McReynolds court further explained:

> As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system.  That is not a 'watershed' change that fundamentally improves the accuracy of the criminal process.

397 F.3d at 481.  The Court finds the reasoning of Floyd and McReynolds on this point persuasive.

For all of the foregoing reasons, the Court concludes that Booker is not retroactive to cases on collateral review.  Because Villegas' conviction became final prior to the date Booker was decided, January 12, 2005, she is not entitled to relief under Booker.  Her motion is DISMISSED for this reason, as well.

10

**D**.        **Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Villegas has not yet filed a notice of appeal, this Court nonetheless addresses whether she would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (emphasis added); see also United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (applying Slack to COA determination in context of § 2255 proceedings). It is unnecessary for the Court to decide whether Villegas has stated a valid claim for relief, because she cannot establish the second Slack criterion.  That is, reasonable jurists would not disagree that the claim raised in her motion is barred due to her waiver, nor could they disagree that Booker is not

11

retroactive.  Accordingly, Villegas is not entitled to a COA.

## V.  CONCLUSION

For the foregoing reasons, Villegas' motion to vacate, correct, or set aside her sentence pursuant to  28 U.S.C. § 2255 (D.E. 15) is DISMISSED WITH PREJUDICE.  Additionally, Villegas is DENIED a Certificate of Appealability.

Ordered this 30th day of October 2005.

Janis Graham Jack
United States District Judge